# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LEBERT A. GORDON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 06-0427 (RJL) |
| | ) | |
| v. | ) | |
| | ) | |
| HARLEY LAPPIN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

Federal defendants, Harley Lappin, and Harrell Watts, named in their official and personal capacities, and federal defendant Al Haynes, named in his individual capacity only, by and through undersigned counsel, hereby respectfully move, pursuant to Fed. R. Civ. P. 12 (b)(1), (3), (4), and (6), for dismissal of this action for lack of subject matter jurisdiction, improper venue, insufficiency of process, and failure to state a claim upon which relief may be granted.[1]  In the alternative, in the event that the Court determines not to dismiss this case, defendants move pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. §§ 1404(a), that the Court exercise its discretion to transfer venue to the Northern District of West Virginia, the judicial district where the alleged incident took place.

In support of this motion, the Court is respectfully referred to the accompanying Memorandum of Points and Authorities and the declaration of Victoria Justice, Federal Bureau

---

[1]  Defendants Lappin, Watts, and Haynes appear in their official capacities only.  They have not been served personally, so do not appear to be a party in their personal capacity at this time, and defendants should be deemed to preserve all defenses available to them, including insufficiency of service of process and immunity from suit.

of Prisons ("BOP") Administrative Remedy Specialist.  A proposed Order consistent with the

relief sought herein is attached.

Respectfully submitted,


____/s/_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


____/s/_____
JOHN F. HENAULT, D.C. Bar # 472590
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. – Civil Division
Washington, D.C.  20530
(202) 307-1249
(202) 514-8780 (facsimile)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LEBERT A. GORDON,** ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action No.: 06-0427 (RJL)** |
| ) | |
| **v.** ) | |
| ) | |
| **HARLEY LAPPIN, *et al.*,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT, OR**
**IN THE ALTERNATIVE, TO TRANSFER**

Defendants hereby submit this memorandum of law in support of its motion, pursuant to Fed.

R. Civ. P. 12(b)(1), (b)(3), (b)(4), and 12(b)(6).

**I.    Introduction**

Plaintiff, *pro se* in this action, is federal inmate Lebert Gordon, Register Number 02143-000,

presently incarcerated at the United States Penitentiary (U.S.P.) Hazelton in Bruceton Mills, West

Virginia.  See (SENTRY Public Information Inmate Data).  Plaintiff is a forty-two year old D.C.

Code inmate who was convicted of murder while armed, assault with a dangerous weapon, and

carrying a pistol without a license who was sentenced by the D.C. Superior Court to a term fifty

years and eight months to life.  He was committed to BOP custody on June 17, 2002.  His parole

eligibility date is October 23, 2025.  See SENTRY Public Information Inmate Data.

**Factual Background**

Plaintiff filed this current action on March 8, 2006 pursuant to <u>Bivens</u>.[2]  Plaintiff alleges that his First and Fifth Amendment rights were violated when he was transferred from federal prison in Atlanta to U.S.P. Hazelton in alleged retaliation for making an inquiry into the circumstances surrounding his transfer to U.S. House of Representative Curt Weldon of Pennsylvania.  <u>See</u> Compl. p. 3 and Compl. Exhbts. p. 10.  Plaintiff contends that he was transferred in an "adverse" manner and as a result of the transfer he lost his UNICOR 1 pay grade and UNICOR scholarship.  <u>Id.</u> at 2.

In response to Congressman Weldon's inquiry, the BOP sent a letter to Congressman Weldon on December 23, 2005 in which the rationale for the transfer was explained.  <u>See</u> Compl. Exbts. p. 10.  The letter explained that due to the activation of U.S.P. Hazelton, it was necessary to transfer inmates based on classification under BOP Program Statement 5100.07, <u>Security Designation and Custody Classification Manual</u>.  <u>Id.</u>  Plaintiff was one of the inmates selected for transfer based on his positive institutional adjustment.  <u>Id.</u>  Additionally, U.S.P. Atlanta had had a change of mission from high security to lesser security, for which plaintiff did not qualify.  <u>Id.</u>  Finally, the letter explained that the transfer moved plaintiff closer to his family members in Norristown, Pennsylvania.  <u>Id.</u>  A copy of this letter was subsequently forwarded to the plaintiff by the Congressman on January 9, 2006.  <u>See</u> Compl. Exbts. p. 9.

In his complaint, plaintiff makes specific allegations against three individual defendants.  The plaintiff contends that Federal Bureau of Prisons National Director Harley Lappin violated plaintiff's constitutional rights by allowing plaintiff's transfer from U.S.P. Atlanta.  <u>See</u> Complaint p. 3.  Plaintiff makes no other allegations against Mr. Lappin.  Defendant Harrell Watts is the National

[2]  <u>Bivens v. Six Unknown Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).

2

Appeals Administrator.  He is being sued in his official and individual capacities for having concurred in the decision to transfer the plaintiff.  <u>See</u> Complaint p. 3.  Al Haynes is the Warden at U.S.P. Hazelton.  He is being sued in his individual capacity only for allegedly deceiving public officials and blocking the remedy process in violation of the plaintiff's constitutional rights.  <u>See</u> Complaint p. 3.

Plaintiff requests $250,000 in compensatory damages.  <u>Id.</u> at 4.  He also seeks injunctive relief in the way of a transfer to a lower security institution in lieu of, or in addition to, the compensatory damages.  <u>Id.</u>

## II.     Standard of Review

### A.     Requests for Dismissal

Defendants move for dismissal of plaintiff's complaint under Rule 12(b)(1), lack of subject matter jurisdiction, 12(b)(3), improper venue, 12(b)(4), insufficiency of process, and 12(b)(6), failure to state a claim.

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of a complaint.  <u>Atchinson v. District of Columbia</u>, 73 F. 3d 418, 421 (D.C. Cir. 1996).  A complaint may be dismissed for failure to state a claim upon which relief may be granted, if the facts pled and reasonable inferences therefrom are legally insufficient to support the relief requested.  <u>Appleton v. United States</u>, 69 F. Supp. 2d. 83, 86 (D.D.C. 1999).  In reviewing a motion to dismiss, whether on grounds of lack of jurisdiction over the subject matter or for failure to state a cause of action, all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the nonmoving party.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>Scheuer v. Rhodes</u>, 416 U.S. 232 (1974).  The court need not,

however, accept as true the plaintiff's legal conclusions.  See Taylor v. FDIC, 132 F.3d 753, 762

(D.C. Cir. 1997).  From the facts alleged in the complaint in this case, plaintiff can prove no set of

facts that would entitle him to relief.

## III. Argument

### A.    Plaintiff Has Not Perfected Service Against the Individual Federal Defendants

None of the individual defendants in this action were properly served with the complaint

in accordance with the rules applicable to individual defendants.  Simpkins v. District of

Columbia Government, 108 F.3d 366, 369 (D.C. Cir. 1997).  It is well established that, in an

action against a federal employee in his or her individual capacity, the individually-sued

defendant must be served with process in accordance with Rule 4(e) of the Federal Rules of Civil

Procedure.  Id.  Rule 4(e) provides that service is effectuated by complying with the laws of the

state for such in which the district court is located by delivering a copy of the summons and

complaint to the defendant (or his appointed agent) personally, or by leaving copies thereof at the

defendant dwelling house or usual place of abode with some person of suitable age and discretion

who resides there.  Fed. R. Civ. P. 4(e).  The SCR-Civil 4(e)(2) allows for service upon

individuals by first class, certified or registered mail.  Actual notice will not, of course, substitute

for technically proper service under Rule 4 and will not permit the Court to render a personal

judgment against an individually-sued defendant.  Sieg v. Karnes, 693 F.2d 803 (8th Cir. 1982);

See also Stafford v. Briggs, 444 U.S. 527 (1980).

In this case, plaintiff served the individual defendants at their place of employment on

March 23, 2006.  See Docket Entry No. 5.  Service at the defendants' place of employment is

not, however, proper service.  Because the record in this action is devoid of any evidence of

proper personal service upon the federal defendants in their individual capacities, this action

cannot proceed against them individually and all claims against the defendants in their individual

capacity should be dismissed.

The District Court will lack jurisdiction over the federal officials, until all of the

provisions of Rule 4(i)(1) and (2) are met.  Ecclesiastical Order of the Ism of Am, Inc. v. Chasin,

845 F.2d 113, 116 (6th Cir. 1988); Sanchez-Mariani v. Ellingwood, 691 F.2d 592, 594 (1st Cir.

1982).  It is the plaintiff in a civil action who has the burden of establishing the validity of

service of process.  Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476,

488 (3d Cir. 1993); Lensel Lopez v. Cordero, 659 F. Supp. 889, 890 (P.R. 1987).  Therefore, if

that cannot be demonstrated, this case should be dismissed based upon insufficiency of service of

process under Rule 12(b)(5).  Accordingly, claims against the individual defendants should be

dismissed.

### B.    *Respondeat Superior* **Liability Is Not Available in** Bivens

Defendant BOP Director Harley Lappin is not personally liable for constitutional torts of

employees he supervises under the doctrine of *respondeat superior*.  Monell v. Department of

Social Services, 436 U.S. 658 (1978); Cameron v. Thornburgh, 983 F.2d 253, 258 (D.C. Cir.

1993); Meyer v. Reno, 911 F. Supp. 11, 15 (D.D.C. 1996).  In Cameron, the D.C. Circuit

dismissed the Attorney General and Director from the suit because the complaint failed to allege

their personal involvement and was based solely "on the bare assumption" that policy decisions

in the District of Columbia influenced the prisoner's treatment in a federal prison in Indiana.  Id.

at 258.

In the Meyer case, 911 F. Supp. at 15, this Court discussed *respondeat superior* within

the context of federal inmate lawsuits:

> Absent any allegations that defendants Reno and Hawk personally participated in
> the events which gave rise to the plaintiff's claims, or any corroborative
> allegations to support the inference that these defendants had notice of or
> acquiesced in the improper securing of detainers against the plaintiff by their
> subordinates, dismissal is appropriate. See Haynesworth v. Miller, 820 F.2d
> 1245, 1259 (D.C. Cir. 1987) (fellow government employees cannot be held liable
> under the theory of *respondeat superior* for either constitutional or common law
> torts); Smith-Bey v. District of Columbia, 546 F. Supp. 813, 814 (D.D.C. 1982)
> (same). *Respondeat superior* has been consistently rejected as a basis for the
> imposition of § 1983 or Bivens liability. See, e.g., Monell v. Dep't of Social
> Srvcs., 436 U.S. 658, 691 (1978); Rizzo v. Goode, 423 U.S. 362 (1976); Boykin
> v. District of Columbia, 689 F.2d 1092, 1097-99 (D.C. Cir. 1982); and Tarpley v.
> Greene, 684 F.2d 1, 9-11 (D.C. Cir. 1982). Therefore, any potential § 1983 or
> Bivens claims against these defendants, whose only relationship to the instant
> litigation is their ultimate supervisory status, must be dismissed.

"Without a showing of direct responsibility for the improper action, liability will not lie against a

supervisory official. A causal connection, or an affirmative link, between the misconduct

complained of and the official sued is necessary." Wolf-Lillie v. Sonquist, 699 F.2d 864, 869

(7th Cir. 1983). Individual liability for damages for violation of constitutional rights is

predicated upon personal responsibility. Schultz v. Baumgart, 738 F.2d 231, 238 (7th Cir. 1984).

Plaintiff makes no allegations to support a claim against defendant Lappin in his

individual capacity. Plaintiff has failed to present any basis to establish that defendant Lappin

was personally involved or had knowledge of the alleged constitutional violations and failed to

take any action. There is no allegation that defendant Lappin participated in any decision or

approved of any policy that related to the case. Rather, just as in the Cameron case, the plaintiff

seems to be basing his claim against the defendant in his individual capacity on an assumption

that based on his position, he bears responsibility for the acts of his subordinates. This is an

6

insufficient basis upon which to maintain a <u>Bivens</u> claim.  <u>See</u> <u>Bivens v. Six Unknown Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).

Therefore, defendant Lappin should be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Federal Rules of Civil Procedure, and under the Prison Litigation Reform Act.

### C.    Failure to Exhaust Administrative Remedies

Plaintiff has failed to exhaust his administrative remedies with regard to all claims raised in this lawsuit.  Exhaustion of all stages of the administrative remedy system is mandatory before a federal action may be commenced by a prisoner.  42 U.S.C. § 1997e(a).  The Bureau of Prisons' three-level administrative remedy procedure is set out at 28 C.F.R. § 542.10 *et seq*., and provides formal review of any complaint which relates to any aspect of the inmate's confinement. Under this process, inmates are encouraged to first attempt resolution of their complaints informally by discussing the matter with a member of their Unit Team.  A record of that attempt is signed by the inmate and a member of the Unit Team.  If informal resolution is insufficient to resolve the matter, the inmate may file a formal complaint with the Warden within fifteen days of the date on which the basis of the complaint occurred.  28 C.F.R. § 542.13.  If dissatisfied with the response from the Warden, the inmate may appeal his complaint to the Regional Director.  28 C.F.R. § 542.15.  If dissatisfied with the Regional Director's response, the inmate may appeal to the Director, National Inmate Appeals, in the Office of the General Counsel in Washington D.C. 28 C.F.R. § 542.14.  An inmate has not exhausted his remedies until he has sought review at all three levels.  28 C.F.R. § 542.15(a).

In <u>Booth v. Churner</u>, 532 U.S. 731 (2001), the Supreme Court held that the PLRA

7

requires exhaustion of all administrative remedies, regardless of whether the administrative

process provides the particular relief sought by plaintiff.  The Prison Litigation Reform Act of

1995 provides that:

> No action shall be brought with respect to prison conditions under §1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

See also Gibbs v. Bolden, 151 F. Supp. 2d 854, 857 (E.D. Mich. 2001) (to exhaust administrative

remedies under the PLRA, prisoner must file grievance against the person he ultimately seeks to

sue).  This legislation was enacted to make the exhaustion provisions mandatory.  "Exhaustion is

now required for all action[s] . . . brought with respect to prison conditions, whether under §

1983 or any other Federal law."  Porter v. Nussle, 534 U.S. 516 (2002) (internal quotations and

citations omitted).  The exhaustion doctrine "enables the agency to develop a factual record, to

apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and

is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy."

Christopher W. v. Portsmouth Sch. Comm., 877 F.2d 1089, 1094 (1st Cir. 1989) (citing McKart

v. United States, 395 U.S. 185, 194 (1969)).

Thus, if a prisoner fails to exhaust available administrative remedies, his civil action must

be dismissed.  Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999).  See e.g., United States v.

Flanagan, 868 F.2d 1544, 1546-47 (11th Cir. 1989) (prisoner's claim that his pre-sentence

custody should have been credited against his sentence was not properly before the court because

prisoner failed to exhaust administrative remedies available through federal prison system before

seeking judicial review).

Even where there is partial exhaustion, dismissal of a case is appropriate.  In Booth v.

Churner, 532 U.S. 731, 741 (2001), the inmate plaintiff exhausted his grievance at the first level, but failed to complete all three levels of the Pennsylvania grievance process.  The Supreme Court upheld the district court's dismissal of the case for failure to exhaust administrative remedies. See also Jackson v. District of Columbia, 254 F.3d 262, 269 (D.C. Cir. 2001) ("[T]he statute means what it plainly says," the district court held; "prisoners may only file actions under federal law concerning their conditions of confinement after they have exhausted their prison's administrative remedies.")

Moreover, where an inmate includes multiple issues concerning his prison conditions, "the plain language of [42 U.S.C.] § 1997e(a) requires that all available prison grievance remedies must be exhausted as to all of the claims."  Graves v. Norris, 218 F.3d 884, 885 (8th Cir. 2000).  See also, Smeltzer v. Hook, 235 F. Supp. 2d 736, 742 (W.D. Mich. 2002) ("Section 1997e(a) provides, 'No action shall be brought with respect to prison conditions under section 1983 of this title. . .until such administrative remedies as are available are exhausted.'  By using the word 'action' instead of 'claim,' Congress indicated that a prisoner is required to exhaust all claims before his action may proceed. . . . 'Had Congress intended to permit the piecemeal adjudication of claims relating to prison conditions, the statute would have precluded the bringing of unexhausted claims rather than action.").

Plaintiff in this case fails to allege or demonstrate that he fully exhausted his administrative remedies through the Bureau of Prisons grievance process on the claim now before the court prior to bringing suit.  From November 3, 2003 through April 23, 2006, plaintiff filed thirteen administrative remedy requests on various issues.  See Justice Decl. ¶ 3.  On December 12, 2005, plaintiff filed a request for administrative remedy at the institution level

(Request No. 397811-F1) stating that a prior BP-8 he had filed in November was never responded to and seeking transfer to a lower custody facility. <u>See</u> Compl. Exbts. p. 7. This request was rejected on December 13, 2005 for failure to follow proper procedure and attempt informal resolution of his complaint.[3] <u>See</u> Compl. Exbts. p. 6. It appears that an informal resolution form was filled out in approximately May 2005. <u>See</u> Compl. Exbts. p. 5. On December 16, 2005, plaintiff filed a Regional Administrative Remedy Appeal in which he complained that he had filed two informal resolution forms on November 18, 2005 and December 12, 2005 both of which were not processed. <u>See</u> Compl. Exbts. p. 4. The Regional Appeal was rejected on December 27, 2005 for failure to follow proper procedure and seek informal resolution of plaintiff's complaint. <u>See</u> Compl. Exbts. p. 3. Plaintiff then filed a Central Office Administrative Remedy Appeal on January 4, 2006. <u>See</u> Compl. Exbts. p. 2. The Central Office Appeal was rejected and returned to plaintiff on January 12, 2006 for failure to follow proper procedure and seek informal resolution of plaintiff's complaint. <u>See</u> Compl. Exbts. p. 1.

The current case is the precise type of situation in which requiring exhaustion is required. Proper exhaustion would permit plaintiff to fully articulate his complaint, as well as allow the Bureau of Prisons the opportunity to appropriately respond and address any concerns regarding conditions of confinement, without prematurely requiring court involvement. Plaintiff has clearly circumvented the intent and the requirements of the PLRA by not fully exhausting his administrative remedies before seeking injunctive relief. He should not be rewarded for doing so

---

[3] Plaintiff's failure to follow proper procedures on December 13, 2005 or earlier is the reason that his subsequent administrative remedy attempts were rejected.

10

by reaching the merits of his complaint.

To allow inmates to proceed to litigation without requiring total exhaustion encourages them to do so, and suggests to them that, at best the Bureau of Prisons, through its Wardens, Regional Directors and Central Office, will not take such allegations seriously or appropriately address inmates' needs, and at worst that these government officials would actually condone such behavior. Neither case exists. To permit plaintiff to proceed will encourage him and other inmates to attempt to circumvent the PLRA's mandatory exhaustion requirement by simply raising similar allegations and asking for immediate injunctive relief. No such exception to the PLRA exists and the court should dismiss this action.

### D.    Defendant Officials May Not Be Sued for Damages In Their Official Capacities

The plaintiff has sued two of the defendants, Mr. Watts and Mr. Lappin, in their official capacities.[4] To the extent that plaintiff seeks damages against these individual defendants in their official capacities, his claims must be dismissed absent a waiver of sovereign immunity. Meyer v. Reno, 911 F. Supp.11 (D.D.C. 1996); Marshall v. Reno, 915 F. Supp. 426 (D.D.C. 1996); Deutsch v. U.S. Dept. of Justice, 881 F. Supp. 49, 55 (D.D.C. 1995). The inherent sovereign immunity of the United States protects it and its agencies [such as the BOP] from suit absent express waiver. See United States v. Nordic Village, 503 U.S. 30 (1992). Sovereign immunity also bars suits for money damages against officials in their official capacities for nondiscretionary acts absent a specific waiver by the government. Clark v. Library of Congress, 750 F.2d 89, 101-02 (D.C. Cir. 1984). Plaintiff's complaint does not contain any colorable basis

---

[4] Defendant Al Haynes was sued only in his individual capacity.

11

for such a waiver.  Therefore, to the extent plaintiff asserts claims for damages against the

defendants in their official capacities such claims must be dismissed for lack of subject matter

jurisdiction.

### E.    Individual Defendants Are Entitled to Qualified Immunity

The Bivens claims against the individual BOP defendants should also be dismissed

because they are entitled to qualified immunity.  Plaintiff is seeking monetary damages against

these defendants.  Qualified immunity, however, shields government officials from suit in

performance of a discretionary function unless that official's conduct violated a clearly

established constitutional or statutory right of which a reasonable person would have known.

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity is "an entitlement not to

stand trial or face the other burdens of litigation."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

The privilege is "an immunity from suit rather than a mere defense to liability; and like an

absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  Id.  The

D.C. Circuit, in Farmer v. Moritsugu, 163 F.3d 610, 613 (D.C. Cir. 1998), explained:

> In short, "[a]n official is ... entitled to summary judgment [on qualified immunity
> grounds] unless '[t]he contours of the right [were] sufficiently clear that a
> reasonable official would [have] underst[ood] that what he [was] doing violate [d]
> that right.' "  Harris v. District of Columbia, 932 F.2d 10, 13 (D.C. Cir. 1991)
> (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987).

By "provid[ing] government officials with the ability reasonably to anticipate when their conduct

may give rise to liability for damages," Anderson, 483 U.S. at 646, the doctrine of qualified

immunity strikes a balance between compensating those injured by official conduct and

protecting the Government's basic ability to function.  See Harlow, 457 U.S. at 813-14.  In other

words, qualified immunity is designed to mitigate the social costs of exposing government

12

officials to personal liability--costs such as "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." Id. at 816; see also Harris, 932 F.2d at 13.  To this end, qualified immunity provides not simply a defense to liability, but also "an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

In determining whether an official is entitled to qualified immunity from personal liability for money damages, there is a two-step process that must be followed by a federal court. Saucier v. Katz, 121 S. Ct. 2151 (2001).  A court must always begin with this first step:  "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 2156.  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.  On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Id.  Therefore, if the first portion of the two-pronged test is not met, as here, there is no constitutional violation, then the defendants are entitled to qualified immunity. See Farmer v. Moritsugu, 163 F.3d 610, 613 (D.C. Cir. 1998) (no Eighth Amendment showing of deliberate indifference by BOP Medical Director; therefore, he was entitled to qualified immunity); Verdecia v. Adams, 327 F.3d 1171, 1177 (10th Cir. 2003) ("Because Verdecia cannot meet the first portion of the two-pronged test, the defendants are entitled to qualified immunity.").

**F.     Plaintiff Has Not Asserted A Valid First Amendment or Fifth Amendment Claim**

Plaintiff alleges that defendants have violated his First and Fifth Amendment rights by transferring him from one federal penitentiary to another.  Plaintiff also claims that defendants hindered him in the administrative remedy process and that the transfer was in retaliation for plaintiff's request for a Congressman's inquiry to relieve hardship.  See Compl. p. 2 and 3.

In the District of Columbia, a plaintiff asserting a claim for retaliation of a constitutionally protected right must allege: (1) that he was engaged in an activity protected by the First Amendment; (2) that defendants impermissibly infringed on his right to engage in that activity; and (3) that the alleged retaliation did not advance legitimate goals of the prison.  Hunter v. District of Columbia, No. 97-1152, 1998 WL 1305543 (D.D.C. Feb. 12, 1998); Pryor-El v. Kelly, 892 F. Supp. 261, 274-75 (D.D.C. 1995) (quoting Rizzo v. Dawson, 778 F.2d 527, 530-31 (9th Cir. 1985)).  A plaintiff alleging retaliation must show that the protected conduct was a "substantial factor" or "motivating factor" in the defendant's decision.  Pryor-El v. Kelly, 892 F. Supp. at 274.

A prisoner's right of access to the courts is part of the First Amendment's right "to petition the government for a redress of grievances."  Garcia v. District of Columbia, 56 F. Supp. 2d 1, 6 (D.D.C. 1998) (citing Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)); Toolasprashad v. Bureau of Prisons, 286 F.3d 576 (D.C. Cir. 2002); Turner v. Safley, 107 S. Ct. 2254, 2259 (1987).  Because the exhaustion of administrative remedies is a prerequisite to filing an action in court, 42 U.S.C. § 1997e(a), the filing of an inmate grievance is clearly protected by the First Amendment.  Toolasprashad at 584.  Thus, although prison officials may limit inmates'

14

ability to file administrative grievances provided the limitations are "reasonably related to legitimate penological interests," <u>Turner</u>, 107 S. Ct. at 2261, officials may not retaliate against prisoners for filing grievances that are "truthful [ ] and not otherwise offensive" to such interests, <u>Crawford-El v. Britton</u>, 93 F.3d 813, 826 (D.C. Cir. 1996), <u>rev'd on other grounds</u>, 118 S. Ct. 1584 (1998); <u>Vignolo v. Miller</u>, 120 F.3d 1075, 1077-78 (9th Cir.1997) (quoting <u>Pratt v. Rowland</u>, 65 F.3d 802, 806 (9th Cir.1995)).

Under the law, the Bureau of Prisons has the sole discretion as to where to place inmates, and this Court must not unduly tie its hands.  <u>See</u>18 U.S.C. §§ 3621(b), 3625; 18 U.S.C. § 4001; <u>Olim v. Wakinekona</u>, 461 U.S. 238 (1983); and <u>Meachum v. Fano</u>,427 U.S. 215 (1976). Certainly, the fact that plaintiff is a prisoner does not deprive him of his constitutional right to free speech. However, in light of his incarceration, this right is necessarily constrained by legitimate penological interests.

In this case, plaintiff does nothing more than make conclusory allegations regarding BOP staff, and in particular against defendant Haynes, without specifying how his constitutional rights were violated.  Instead, he makes the sweeping claim that defendant Haynes "deceived public officials in blockage to remedy process."  He does not state what any defendant did, or did not do, to harm him in any manner other than the general, vague allegations referenced above. <u>Frazier v. DuBois</u>, 922 F.2d 560, 562 & n.1 (10th Cir. 1990) (plaintiff must allege specific facts showing retaliation, not conclusory speculation).

To the contrary, the letter from the BOP addressed to Congressman Weldon reflects the date of Congressman Weldon's letter was September 28, 2005, more than four months after inmate Gordon was transferred from U.S.P. Atlanta.  <u>See</u> Compl. Exbts. p. 10.  A review of the

15

Bureau's computerized records reflects that the plaintiff had been removed from U.S.P. Atlanta on May 9, 2005. See Ex. B. Thus, the plaintiff's move to U.S.P. Hazelton could not be in retaliation to the letter Congressman Weldon sent to the institution because the letter was sent many months after the plaintiff's transfer. Second, the plaintiff's transfer to U.S.P. Hazelton did not have any impact on his right to file grievances as he sent a grievance to the Congressman after the transfer.

Third, the transfer to U.S.P. Hazelton was reasonably related to a legitimate penological reason. Plaintiff was transferred because of the recent opening of U.S.P. Hazelton and the change of mission in U.S.P. Atlanta, as were many other inmates. See Compl. Exbts. p. 10-11. Plaintiff cannot show that this legitimate penological reason is pretextual.

Moreover, the Plaintiff was not adversely affected by his transfer to U.S.P. Hazelton. The plaintiff has not been able to carry his burden of establishing a prima facie case of retaliatory transfer. Carter v. McGrady, 292 F.3d at 159. Incarcerated inmates are subjected to moves among the different institutions based on a whole host of reasons, ranging from security reasons, institution population, and population shifts and numbers.

In addition to his primary First Amendment claim, plaintiff alleges a constitutional claim under the Fifth Amendment Due Process Clause. To state a claim for violation of his due process rights under the Fifth Amendment, plaintiff must identify a protected liberty interest that has been denied. Sandin v. Conner, 115 S. Ct. 2293 (1995). Plaintiff, in his complaint, appears to assert a liberty interest in being housed at a particular institution. In order for a liberty interest to be involved, plaintiffs must either allege that defendants' actions increased his period of confinement or that additional restrictions were placed upon him that imposed an "atypical and

16

significant hardship on [plaintiff] in relation to the ordinary incidents of prison life." Id., 115 S. Ct. 2293.  Plaintiff has provided no factual basis that his period of confinement was increased or that additional restrictions were placed upon him.  The Constitution does not create a liberty interest in being held at, or remaining at, a given facility.  Montanye v. Haymes, 96 S. Ct. 2543 (1976); Grayson v. Rison, 945 F.2d 1064 (9th Cir. 1991); Beard v. Livesay, 798 F.2d 874 (6th Cir. 1986); Leibowitz v. U.S., 729 F. Supp. 556 (E.D. Mich. 1989), aff'd without opinion, 914 F.2d 256 (6th Cir. 1990).

Construing [these claims] under the liberal rules applicable to *pro se* complaints, there still remains no arguable legal or factual basis upon which the complaint could go forward. Plaintiff has failed to state a claim for violation of his First and Fifth Amendment rights.

### G.    Plaintiff is Not Entitled to Injunctive Relief

Plaintiff is seeking injunctive relief of a transfer to a lower security institution.  See Compl. p. 4.  The statute governing prospective relief[5] in the Prison Litigation Reform Act (PLRA), codified at 18 U.S.C §3626(a)(1), puts substantial limitations on the issuance of this type of relief.  Specifically, the Act provides, "prospective relief in any civil action with respect to 'prison conditions' (defined by the Supreme Court in Porter v. Nussle, 122 S. Ct. 983 (2002), as "any aspect of prison life") shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs.  The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means

---

[5] The statute defines prospective relief as "all relief other than compensatory monetary damages."  18 U.S.C. §3626(g)(7).

17

necessary to correct the violation of the Federal right." See also Thompson v. Gomez, 993 F.
Supp. 749, 754-55 (N.D. Cal. 1997), rev'd on other grounds in Gilmore v. People of the State of
California, 220 F.3d 987, 1005 (9th Cir. 2002). This mandatory requirement must be more than
mimicking the language of the statute, and is discussed in Cason v. Seckinger, 231 F.3d 777
(11th Cir. 2000); see also, Johnson v. Breeden, 280 F.3d 1308 (11th Cir. 2002).

The statute further states, "The court shall give substantial weight to any adverse impact
on public safety or the operation of a criminal justice system caused by the relief." Any order
that this court might issue with respect to the plaintiff's institution assignment directly implicates
this portion of the PLRA, in that it will have an adverse impact on the BOP's authority to assign
housing to the inmate population and properly allocate the available resources, as well as the
operation of the federal prison system. The plaintiff is not entitled to be housed in a lower
security institution. Indeed, the Plaintiff clearly does not have a right to be housed in an
institution of his choice. The BOP clearly acted within the powers delegated from Congress and
placed the inmate according to BOP policy. Thus, the plaintiff is not entitled to any remedy as
no right of his was violated by the actions of the BOP and its employees.

**H.    The Case Must Be Dismissed or Transferred for Improper Venue**

In contrast to an official capacity claim against a federal employee, which seeks relief
from the United States, an individual-capacity claim against a federal employee seeks recovery
from the personal financial assets of the employee. Hafer v. Melo, 502 U.S. 21, 25 (1991).

Venue for plaintiff's Bivens claims is governed by the provisions of 28 U.S.C. §1391(b),
which provides in applicable part:

> (b)     A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

In Stafford v. Briggs, 444 U.S. 527, 542 (1979), the Supreme Court stated that this provision, rather than the more permissive venue provisions of 28 U.S.C. §1391(e), are applicable in Bivens actions:

> What emerges is that the bill's author, the Committees, and the Congress intended nothing more than to provide nationwide venue for the convenience of individual plaintiffs in actions which are nominally against an individual officer but are in reality against the Government.  A suit for money damages which must be paid out of the pocket of the private individual who happens to be--or formerly was-- employed by the Federal Government plainly is not one "essentially against the United States," and thus is not encompassed by the venue provisions of Section 1391(e).

Noting that Congress did not intend to require "those serving their Government the burden of defending personal damages actions in a variety of distant districts. . . ," Id., 444 U.S. at 545, the Court found that these federal officers should be treated like others who are sued for personal damages, and the provisions of 28 U.S.C. §1391(b) should govern.

Plaintiff has provided no evidence that any of the events giving rise to the claim occurred within the District of Columbia, therefore, venue is improper in the District of Columbia pursuant to 28 U.S.C. § 1391(b) and Meyer v. Reno, et al., 911 F. Supp. 11, 15 (D.D.C. 1996). Plaintiff's complaint involves allegations related to his transfer from a prison facility in Atlanta to another facility in West Virginia.  This case should therefore be dismissed under Rule 12(b)(3), Federal Rules of Civil Procedure.

19

To the extent that any portion of this case might withstand the PLRA dismissal arguments, it is inappropriately brought in the United States District Court for the District of Columbia.  This is an individual claim that involves factual issues arising in the Northern District of West Virginia.  Nevertheless, 28 U.S.C. § 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought.

The United States Court of Appeals for the District of Columbia has held that cases such as this one should <u>not</u> be heard in the District of Columbia, but should instead be transferred to the judicial district where the prisoner is incarcerated, pursuant to § 1404(a).  ". . . [M]any, if indeed not most, petitions filed by prisoners not confined in the District of Columbia and not sentenced here originally, will tend to involve factors that make transfer to the place of incarceration appropriate."  <u>Starnes v. McGuire</u>, 512 F.2d 918, 926 (D.C. Cir. 1974) (<u>en banc</u>).  The Court of Appeals recognized that even if venue is technically appropriate, "there is certainly no reason why all cases involving the construction or constitutionality of a federal statute should be litigated in the District of Columbia."  <u>Id.</u> at 925.  Rather, where the records, witnesses, and counsel for the case are located near the prison and there is no issue of national importance raised by the complaint, "transfer of the complaint to the district of the plaintiff's incarceration is indicated." <u>Id.</u> at 933; <u>see also</u> <u>Lincoln v. Bureau of Prisons</u>, Civ. No. 96-2325, at 2 (D.D.C. May 2, 1997) ("[t]his Circuit discourages 'carpetbagging' by prisoners who are incarcerated elsewhere.")

The D.C. Circuit in <u>Starnes</u> set out a number of factors for a district court to use in deciding whether to transfer a civil case brought by a prisoner incarcerated outside the District of

Columbia.  Those factors are: (1) the prisoner's difficulty of communication with counsel; (2) the difficulty of transferring the prisoner; (3) the availability of witnesses and files; (4) the speed of final resolution; and (5) whether the case involves issues of national policy that require the testimony of high-level administrators located in Washington, D.C.  Starnes, 512 F.2d at 929-33.

In this case, these factors strongly support the appropriateness of transfer.  This is a *pro se* case so communication with counsel is not an issue.  The majority of witnesses and records that would be involved in litigating plaintiff's claims are all at U.S.P. Hazelton.  To the extent this case survives dismissal, it should be transferred to the Northern District of West Virginia, where plaintiff was housed when the matters giving rise to this complaint took place.  It is there that most of the witnesses and documents involved are located, and where jurisdiction and venue can be readily achieved.  Nevertheless, defendants urge that dismissal, not transfer, is appropriate.  Compare Simpkins v. District of Columbia, 108 F.3d 366 (D.C. Cir. 1997) (appropriate to dismiss insubstantial Bivens actions versus transfer).

As stated above, plaintiff currently resides in West Virginia at U.S.P. Hazelton, not in the District of Columbia.  Moreover, the alleged constitutional violations occurred at U.S.P. Hazelton, which is not within the jurisdiction of the United States District Court for the District of Columbia.

## **CONCLUSION**

For all of the foregoing reasons, this action should be dismissed.  If it is not dismissed, it should be transferred to the Northern District of West Virginia pursuant to 28 U.S.C. §1404(a).

21

Respectfully submitted,

___/s/_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


___/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


___/s/_____
JOHN F. HENAULT, D.C. Bar # 472590
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. – Civil Division
Washington, D.C.  20530
(202) 307-1249; (202) 514-8780 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on the 16th day of June, 2006, I caused service of the

foregoing to be made on the *pro se* plaintiff:

Lebert A. Gordon
Reg. No. 02143-000
U.S.P. Hazelton
Inmate Box 2000
Bruceton Mills, WV 26525


_____/s/_____
JOHN F. HENAULT, D.C. Bar # 472590
Assistant United States Attorney